**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| LORETTA BOYD *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 8:09-cv-02661-AW |
| COVENTRY HEALTH CARE INC. *et al.*, | Related Actions: |
| Defendants. | 09-2850-AW |
| | 09-3063-AW |
| | 09-3074-AW |
| | 10-0462-AW |

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion for Reconsideration of the Court's March 31, 2011 Opinion and Order ("Motion for Reconsideration"). The parties have fully briefed the issues and the Court deems no hearing necessary. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Reconsideration.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Except where otherwise indicated, the Court takes the following facts from Plaintiffs' Amended Complaint and construes them favorably to Plaintiffs. Defendant Coventry Health Care Inc. ("Coventry") is a national managed health care company based in Bethesda, Maryland. Coventry operates health plans, insurance companies, network rental/managed care services companies, and workers' compensation services companies. In addition to Coventry, Plaintiffs

1

name several Coventry employees as Defendants. Plaintiffs categorize these Defendants as "Director Defendants," "Officer Defendants," and "Committee Defendants."[1]

Plaintiffs participated in an ERISA defined contribution plan ("the Plan") that Coventry sponsored. The Plan is a voluntary contribution plan whereby participants make contributions to the Plan and direct the Plan to purchase investments with those contributions from investment options that participants pre-select. From February 9, 2007 through October 22, 2008 (the "Class Period"), the Plan acquired and held shares of Coventry common stock. Coventry common stock was offered as one of the retirement saving options in the participant-contribution component of the Plan. In other words, Plan participants could direct their accounts to be invested in Coventry Stock and twenty-three mutual funds that the Plan offered as investment options. The Plan authorizes Coventry to make employer matching contributions up to a certain level based on a participant's contributions and compensation. Plaintiffs assert that Coventry made all of its matching contributions in Coventry common stock. Plaintiffs also state that the Plan documents did not obligate Coventry to invest solely in Coventry stock.

Plaintiffs' allegations revolve around Coventry's Medicare Advantage Private Fee for Service product ("PFFS"). PFFS is a type of Medicare plan that private companies offer that allows members to choose their own healthcare provider. Coventry launched PFFS in forty-three states on January 1, 2007. Plaintiffs maintain that, at the start of the Class Period, Coventry's future growth prospects depended highly on PFFS. Nevertheless, Plaintiffs contend that Coventry launched PFFS without establishing a control system by which it could monitor, process, account for, and pay claims emanating from insureds' visits to non-network service providers. According to Plaintiffs, this omission caused a claims-processing lag that adversely affected Coventry's profitability. Nonetheless, in Plaintiffs' estimation, Coventry employed

---

[1] Plaintiffs also name the "401(k) Plan Investment Committee" as a Defendant.

underpricing strategies to create a false appearance that PFFS was as profitable as Coventry touted it to be. Additionally, Plaintiffs allege that Defendants and other Coventry insiders sold hundreds of thousands of shares of personally held Coventry stock for gross proceeds in excess of $14 million even as certain Defendants issued misleading statements about Coventry's financial health. Plaintiffs further allege that Defendants issued these inaccurate statements through a variety of outlets, including a SEC filing and a press release.

Based on these and other allegations, Plaintiffs filed a class-action complaint against Defendants on October 13, 2009. Doc. 1. In their Amended Complaint, filed on June 28, 2010, Plaintiffs assert four claims. Doc. 17. Count I asserts a claim for failing to prudently and loyally manage the Plan and assets of the Plan. In Count II, Plaintiffs assert a claim for failing to monitor fiduciaries. For its part, Count III asserts a claim for failing to avoid conflicts of interest. Finally, Count IV asserts a claim for co-fiduciary liability. On August 12, 2010, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss"). Doc. 20.

The Court ruled on Defendants' Motion to Dismiss on March 31, 2011 ("March 31 Opinion"). Doc. 29. In the March 31 Opinion, the Court granted in part and denied in part Defendants' Motion to Dismiss. Whereas the Court denied the Motion to Dismiss as to Counts I, III, and IV of the Amended Complaint, the Court granted it as to Count II. On April 14, 2011, Defendants filed the instant Motion for Reconsideration. Doc. 33. Defendants use their Motion for Reconsideration largely to rehash arguments that the Court rejected in its March 31 Opinion.

II. **STANDARD OF REVIEW**

In pertinent part, Rule 54(b) provides that Courts may revise interlocutory orders "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (footnote omitted) (noting that "every order short

of a final decree is subject to reopening at the discretion of the district judge"). In view of this discretion, "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citation omitted). Nevertheless, "doctrines such as law of the case . . . have evolved as a means of guiding" district courts' discretion to reconsider interlocutory orders. *Id.* at 515. (citing *Sejman v. Warner–Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). The law of the case doctrine dictates that courts must follow the law that a prior decision establishes unless "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" *See Sejman*, 845 F.2d at 69 (quoting *EEOC v. Int'l Longshoremen's Assoc.*, 623 F.2d 1054, 1058 (5th Cir. 1980)). Albeit omnipresent, the law of the case doctrine cannot positively prohibit a district court from reconsidering an interlocutory order in light of federal courts' "ultimate responsibility . . . to reach the correct judgment under law." *Murphy Farms*, 326 F.3d at 515. Yet "concerns of finality and judicial economy" may temper this responsibility. *Id.* Therefore, relief is rarely ever appropriate "[w]hen the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to change its mind." *Pritchard v. Wal Mart Stores, Inc.*, 3 Fed. App'x 52, 53 (4th Cir. 2001) (citation and internal quotation marks omitted).

### III. LEGAL ANALYSIS

#### A. Reconsideration of the Court's March 31 Opinion

Defendants first argue that the Court applied the wrong standard of prudence in its March 31 Opinion. Defendants assert that the Court applied the standard of "procedural prudence" set

4

forth in *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410 (4th Cir. 2007). Doc. 33-1 at 6. Defendants contend that the Court committed clear error in applying the procedural prudence standard because it fails to take into account whether the decision to invest in Coventry stock was "objectively imprudent." *Id.* Defendants maintain that the so-called objective prudence standard prescribes that a fiduciary fails to breach ERISA's duty of prudence "by failing to sell employer securities unless the employer is facing imminent collapse." *Id.* at 7. That is, Defendants postulate that fiduciaries satisfy their duty of prudence when they make intrinsically sound investments even if the fiduciaries employ inappropriate methods to investigate the merits of the investments.

This argument represents a disingenuous attempt to circumvent the Fourth Circuit's holding in *DiFelice*. The *DiFelice* court held that "when deciding whether a plan fiduciary has acted prudently, a court must inquire whether the individual trustees . . . **employed the appropriate methods** to investigate the merits of the investment and to structure the investment." 497 F.3d at 420 (emphasis added) (brackets and internal quotation marks omitted). "In other words, a court must ask whether the fiduciary engaged in a **reasoned decision-making process** . . . ." *Id.* (emphasis added). Thus, *DiFelice* emphasizes the procedural propriety of the fiduciaries' actions in relation to the transaction at issue.

Courts examine the totality of the circumstances to determine whether fiduciaries exercise prudence in administering a plan. *DiFelice*, 497 F.3d at 418. The *DiFelice* court identified the following factors as bearing on this determination: "the plan structure and aims, the disclosures made to participants regarding the general and specific risks associated with investment in company stock, and the nature and extent of challenges facing the company that would have an effect on stock price and viability." *Id.* at 418. Although the merits of the

5

transaction may inform this inquiry, the procedural soundness surrounding the investment remains the touchstone. *See id.*; *see also* Employee Benefits Law 666–67 (Steven J. Sacher et al. eds., 2d ed. 2000) (collecting cases).

In this case, the Court did not commit "clear error" in applying *DiFelice*'s "procedural prudence" standard because *DiFelice* essentially enunciates such a standard. Although the investment's underlying merits inform the prudence inquiry, many of the factors that *DiFelice* identifies relate to procedural prudence. Thus, at a minimum, *DiFelice* imposes no *per se* requirement that ERISA plaintiffs plead the substantive unsoundness of the investment at issue. Defendants basically try to bifurcate the ERISA's uniform prudence requirement into separate substantive and procedural prongs. Neither ERISA's text nor *DiFelice*'s explication thereof supports this false distinction. Aptly, the *DiFelice* court states:

> ERISA itself sets forth the *only* test of a fiduciary's duties: the requirement that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

497 F.3d at 422–23 (quoting 29 U.S.C. § 1104(a)(1)(B)).

Moreover, at this stage in the litigation, it is premature to scrutinize the substantive soundness of Coventry's investment decisions. As a rule of thumb, courts properly make such fact-intensive determinations on motion for summary judgment or at trial. Indeed, courts decided most of the cases that Defendants cite to support their substantive prudence theory at trial or on summary judgment. Accordingly, the Court declines to reconsider its March 31 Opinion based on Defendants' substantive prudence argument.

Second, Defendants argue that the Plan denied them discretion to remove Coventry stock from the Plan. Doc. 33-1 at 9. Defendants note that the Court wrote in its March 31 Opinion that "nothing in the Plan documents prevented the fiduciaries from taking corrective action to prevent erosion of the Plan assets stemming from the Plan holdings of Coventry Stock during the Class Period." *Id.* (citing Doc. 29 at 8). Plaintiffs maintain that this holding contravenes the Plan's plain language. Pertinently, the Plan states:

> All or some of the Participant's Account may be invested in Qualifying Employer Securities. If the Participant has investment control, once an investment in the Qualifying Employer Securities Fund is made available to Participants, it shall continue to be available unless the Plan is amended to disallow such available investment.

Doc. 20-3 § 5.01(c). Plaintiffs insist that the language "it shall continue to be available unless the Plan is amended to disallow such available investment" constitutes plenary proof that Defendants lacked discretion to halt their investment in Coventry stock.

The Court disagrees. The preceding provision is ambiguous. The clause "[i]f the Participant has investment control" appears to qualify the meaning of the language "it shall continue to be available unless the Plan is amended to disallow such available investment." Thus, the language on which Defendants base their argument may not come into play where Plaintiffs lack control over the investment. Other Plan provisions suggest that, at least to some extent, Plaintiffs lacked control over the investment. *See, e.g.*, *id.* § 1.43 (emphasis added) (defining "Named Fiduciary" as "the person or persons who have authority to **control** and manage the operation of the Plan"). Minimally, then, the clause "[i]f the Participant has investment control" is facially ambiguous. To be sure, discovery promises to shed light on this obscure language. For the time being, it suffices to say that the Amended Complaint adequately alleges that Plaintiffs lacked control over the investment in Coventry stock.

7

The meaning of the phrase "made available" is also ambiguous. Assuming the applicability of the language "[the investment] shall continue to be available unless the Plan is amended," it is unclear from the face of the Plan that this language is synonymous with continuing to invest in Coventry stock. There may be a way that Coventry could "make available" its stock to Plaintiffs without continuing to invest in it. For instance, even if Plaintiffs elected to invest in Coventry stock, Defendants might have had discretion to stop making matching contributions in the same. Furthermore, even if Defendants lacked such discretion, it is plausible that Defendants could have alerted Plaintiffs that Coventry stock was a poor investment choice and encouraged them to designate a different investment. In short, the meaning of the phrase "made available" is facially ambiguous. Presumably, discovery will help illuminate this linguistic obscurity.

The preceding discussion demonstrates that the disputed provision does not, as a matter of law, bear the meaning that Defendants attach to it. Therefore, the Court declines to reconsider its March 31 Opinion based on Defendants' second argument.

Defendants' third argument embodies a series of loosely related arguments that Defendants clump together under a single heading. Defendants argue that the Court committed clear error by concluding that Plaintiffs adequately alleged loss. The Court would rule against Defendants on this argument even if the Plaintiffs failed to sufficiently plead loss. Entitled "Liability for Breach of Fiduciary Duty," ERISA § 409 provides:

> **Any person who is a fiduciary** with respect to a plan **who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter** shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of

8

such fiduciary which have been made through use of assets of the plan by the fiduciary, and **shall be subject to such other equitable or remedial relief as the court may deem appropriate**, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). Correspondingly, ERISA § 502 empowers participants to bring civil actions for relief under § 409. 29 U.S.C. § 1132(a). In light of these provisions, there is no categorical requirement that an ERISA plaintiff plead economic loss. Therefore, Defendants' argument that Plaintiffs failed to adequately allege loss is beside the point.[2]

Defendants also argue that Plaintiffs cannot prevail on their misrepresentation claim (i.e. duty of loyalty) for various reasons. Defendants contend that the Court did not "find" that Defendants made the alleged misrepresentations in a fiduciary capacity. It is hardly surprising that the Court made no such "finding" in that the Court addressed a motion to dismiss in its March 31 Opinion. In so doing, the Court did not make any "findings" *per se*. Rather, the Court accepted the truth of the Amended Complaint's well-pleaded allegations, construed them in a light favorable to the Plaintiffs, and asked whether it was plausible that Plaintiffs could prevail on their duty of loyalty claim with the benefit of discovery. With this standard's liberality in mind, the Court readdresses this question.

Courts "apply a functional analysis in determining if a party acts as a fiduciary and owes fiduciary duties with regard to particular conduct." *DiFelice*, 497 F.3d at 418 (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Thus, whether a party acts as a fiduciary with respect to communications to plan participants highly depends on "the factual context in which the statements were made." *Varity Corp. v. Howe*, 516 U.S. 489, 503 (1996). In making this

---

[2] This does not necessarily imply that the Court otherwise agrees with Defendants' argument that Plaintiffs failed to sufficiently plead loss.

determination, courts may consider (1) the extent to which the speaker had authority under the plan and (2) the extent to which the communications related to the plan. *See id.*

In this case, Plaintiffs allege that Defendants' misleading communications included a SEC filing and a press release. *See* Doc. 17 ¶¶ 148–49. Plaintiffs also allege that Defendants Shawn M. Guertin and Dale B. Wolf issued these communications. Plaintiffs assert further that Guertin was the "Plan Administrator and a member of the Committee." *Id.* ¶ 30. Plaintiffs add that Guertin served "as the Company's Executive Vice President, Chief Financial Officer ("CFO") and Treasurer." *Id.* Likewise, Defendants contend that Wolf was Coventry's CEO and Director, and that he signed key Plan documents. *Id.* ¶ 19. Moreover, Guertin and Wolf occupied such high positions in Coventry that it is plausible that they served as Coventry's alter ego. *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758 (1998) (interpreting § 219(2)(a) of the Restatement (Second) of Agency for the proposition that an "agent's high rank in the company [may] make[] him or her the employer's alter ego").

If the Court assumes the truth of these factual allegations and construes them most favorably to Plaintiffs, they suffice to state a facially plausible claim that Guertin and Wolf acted as fiduciaries with respect to their alleged misrepresentations/omissions. Similar to *Varity*, Plaintiffs allege that company officials with considerable authority under the Plan made Plan-related communications. What is more, without the aid of discovery, the Court struggles to see how Plaintiffs could flesh out the factual context in which Guertin and Wolf made these statements. Indeed, the test of determining a party's fiduciary capacity is "functional." Therefore, the test is ill-suited for application at the motion to dismiss stage. For these reasons, the Court committed no "clear error" by failing to "find" that Defendants made the alleged misrepresentations in a fiduciary capacity.

Alternatively, Defendants argue that Plaintiffs' allegations fail as a matter of law because "public statements to the market by corporate officers about corporate finances are not actionable." This argument fails for a variety of reasons. First, as the preceding paragraph explains, the Amended Complaint sufficiently states that Guertin and Wolf acted in their fiduciary capacity when they made the alleged misrepresentations. Second, Plaintiffs allege that Wolf issued a misleading statement through a press release, not just a SEC filing. Third, Defendants fail to direct the Court to controlling authority for the somewhat sweeping proposition that plan administrators can never incur ERISA duty of loyalty liability where they make material misrepresentations in SEC filings. At a glance, the proposition appears inconsistent with *Varity*. There, the Supreme Court noted that "ERISA requires a fiduciary to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 516 U.S. at 506 (citing 29 U.S.C. § 1104(a)). In that vein, the *Varity* court declared that "[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Id.* (alternation in original) (citation and internal quotation marks omitted). Here, Plaintiffs allege that Defendants made material omissions in their SEC filing. Considering "the special nature and purpose of employee benefit plans," *Varity*, 516 U.S. at 506 (citation omitted), the Court declines to hold that the presence of a misrepresentation or omission in a SEC filing constitutes a categorical cloak to ERISA duty of loyalty liability.

Finally, Defendants argue that Plaintiffs' failure to plead reliance on Defendants' alleged misrepresentations precludes their duty of loyalty claim. Although this argument has force, Plaintiffs' failure to rely on Guertin's and Wolf's alleged misrepresentations/omissions would not automatically shield Defendants from duty of loyalty liability. As mentioned above, economic loss is not a prerequisite for ERISA liability. Rather, plaintiffs may establish a breach

of the duty of loyalty by showing that administrators were dishonest to them about a plan and its prospects while acting in a fiduciary capacity. The Court questions whether Plaintiffs can ultimately make this showing. Nonetheless, taken as true and construed most favorably to Plaintiffs, the Amended Complaint's factual contentions make it plausible that, with the aid of discovery, Plaintiffs can show that Guertin and Wolf effectively lied about the Plan in a fiduciary capacity. The same analysis applies to Coventry in that it is plausible that additional facts will establish that Guertin and Wolf are Coventry's alter ego. For the foregoing reasons, the Court declines to reconsider its March 31 Opinion based on Defendants' third argument as to Guertin, Wolf, and Coventry.

The Court takes this opportunity to clarify a minor oversight in its March 31 Opinion. In the Opinion, the Court denied Defendants' Motion to Dismiss as to Count I (failure to prudently and loyally manage the Plan) of the Amended Complaint. In so doing, the Court did not fully delineate Plaintiffs' prudence claim from their duty of loyalty claim predicated on Defendants' alleged misrepresentations. The preceding analysis evinces that the Amended Complaint states a facially plausible misrepresentation claim as to only Guertin, Wolf, and Coventry. It follows that the Court must dismiss Plaintiffs' misrepresentation claim as to the remaining Defendants, namely: Daniel N. Mendelson; Rodman W. Moorhead, III; Timothy T. Weglicki; L. Dale Crandall; Elizabeth E. Tallett; Allen F. Wise; Joel Ackerman; Lawrence N. Kugelman; Patrisha Davis; Harvey C. DeMovick; James E. McGarry; Allen H. Spath; David A. Finkel; Maria Z. Fitzpatrick; and Richard A. Bates.[3]

Defendants' fourth, and final, argument for reconsideration is that Plaintiffs failed to adequately allege that Defendants were fiduciaries within the meaning of ERISA. Defendants

---

[3] The Court refrains from dismissing Plaintiffs' misrepresentation claim as to Defendant 401(k) Plan Investment Committee at this juncture in that Plaintiffs allege that Guertin served on said Committee.

assert that the Amended Complaint's factual assertions regarding Defendants' purported fiduciary status parrot ERISA's statutory definition for fiduciary. Defendants contend that such legal conclusions fly in the face of the pleading standards that the Supreme Court promulgated in *Twombly* and *Iqbal*. To buttress their argument, Defendants note that the Court stated in its March 31 Opinion that "Plaintiffs' Complaint does appear to track the statutory definition of fiduciary." Doc. 29 at 13.

Defendants neglect to mention that, just before making this statement, the Court declared that "an ERISA complaint need do little more than track the statutory definition of fiduciary to establish a defendant's fiduciary status in compliance with Rule 8." *Id.* (internal quotation marks omitted) (citing *In re Morgan Stanley ERISA Litig.*, 696 F. Supp.2d 345, 365 (S.D.N.Y. 2009)). However unsettled this rule in the wake of *Twombly* and *Iqbal*, it still reflects the fact that "ERISA defines 'fiduciary' in functional terms of plan control and authority." Doc. 35 at 12 (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993)). Courts have "recognized Congress's intention that ERISA's definition of fiduciary be broadly construed." *See Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006) (citing *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997)). As previously stated, whether a party acts as a fiduciary with respect to communications to plan participants highly depends on "the factual context in which the statements were made." *Varity*, 516 U.S. at 503. Therefore, to a considerable degree, the fact-intensive nature of ERISA's definition for fiduciary may require plaintiffs' factual allegations regarding an actor's fiduciary status to track the statutory definition.

Moreover, not all of Plaintiffs' factual averments concerning Defendants' status as fiduciaries track the statutory definition. As mentioned above, Plaintiffs allege that Guertin was the "Plan Administrator and a member of the Committee." Doc. 17 ¶ 30. Plaintiffs further allege

13

that Guertin served "as the Company's Executive Vice President, Chief Financial Officer ("CFO") and Treasurer." *Id.* Likewise, Defendants allege that Wolf served as Coventry's CEO and Director, and that Wolf inked crucial Plan documents. *Id.* ¶ 19. Such allegations are significant in that the *Varity* court considered both the extent to which the speaker had authority under the plan and the extent to which the communications related to the plan when determining whether an administrator acted as a fiduciary. *Varity*, 516 U.S. at 503.

For the reasons set forth above, the Court declines to reconsider its March 31 Opinion based on Defendants' fourth argument.[4]

## B. Certification of Interlocutory Orders for Appeal

Defendants argue in the alternative that the Court should certify the March 31 Opinion and accompanying Order for interlocutory appeal. Defendants argue that the four arguments that the Court rejected in Part III.A present issues that satisfy the statutory prerequisites for certification of interlocutory orders for appeal. After stating the standard for certification of interlocutory orders for appeal, the Court briefly explains wherein Defendants' arguments fail to satisfy this standard.

### 1. *Standard for Certification of Interlocutory Orders for Appeal*

Section 1292(b) of the United States Code gives district courts discretion to certify an interlocutory order for appeal where three criteria are present: (1) the order involves a controlling question of law; (2) substantial ground for difference of opinion exists regarding the question;

---

[4] Defendants ask the Court to reconsider its decision to deny their Motion to Dismiss as to Counts II and IV of the Amended Complaint in that these Counts are "wholly derivative of Count I." Doc. 33-1 at 12. This argument is basically moot in that the Court has largely denied Defendants' Motion for Reconsideration as to Count I. Admittedly, the Court granted Defendants' Motion for Reconsideration as to Plaintiffs' misrepresentation claim (a subset of Count I) in relation to all the Defendants other than Coventry, Guertin, Wolf, and 401(k) Plan Investment Committee. Therefore, to the extent that Counts II and IV are truly derivative of this aspect of Count I, it might behoove the Court to dismiss Counts II and IV as to the other Defendants in relation to the misrepresentation claim. Yet, considering that Defendants failed to explain the meaning of "wholly derivative" liability in their Motion for Reconsideration, the Court deems it advisable to reserve judgment on this question for the summary judgment stage.

and (3) allowing interlocutory appeal would materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978). "A party seeking review of a nonfinal order must first obtain the consent of the trial judge." *Coopers*, 437 U.S. at 474. The party moving for certification of an interlocutory order pursuant to § 1292(b) bears the burden of proving that the prospective appeal satisfies each of the statutory prerequisites for certification. *See id.* at 437 U.S. at 474–75. Generally, "exceptional circumstances" must exist to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at 475 (citation and internal quotation marks omitted). Consonantly, the Fourth Circuit has stated that "§1292(b) should be used sparingly and . . . its requirements must be strictly construed." *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989) (citation omitted).

       2.       *Defendants' Arguments Fail to Satisfy § 1292(b)'s Strict Standard*

Defendants assert that the Court's March 31 Opinion involves four questions of law that would potentially dispose of their claims. Defendants label these allegedly dispositive questions of law as (1) the liability question, (2) the presumption question, (3) the communications question, and (4) the reliance question.

Defendants state the liability question as follows: "Whether plan language requiring that employer securities shall be maintained as an investment option precludes fiduciary discretion over the Coventry stock and liability for maintaining the stock." Doc. 33-1 at 14. This question misses the point. As previously illustrated, the Plan provision on which Defendants base this argument is ambiguous. This observation undermines the premise of Defendants' argument. Therefore, the Court declines to certify this nonissue for interlocutory appeal.

15

Defendants state the presumption question as follows: "Whether a plaintiff must overcome the presumption of prudence at the pleadings stage." The Court assumes, without deciding, that the presumption question involves a controlling question of law for which substantial ground for difference in opinion exists. Nevertheless, allowing interlocutory appeal of this issue would not materially advance the termination of the litigation. Even if the Fourth Circuit held that the so-called *Moench* presumption applies at the pleading stage, "a determination based on this new standard would still be required." *DiFelice v. U.S. Airways, Inc.*, 404 F. Supp.2d 907, 909 (E.D. Va. 2005) (citing *Moench v. Robertson*, 62 F.3d 553, 571 (3rd Cir. 1995)). In other words, Defendants' argument that certification of the presumption issue would materially advance the termination of the litigation overlooks that the *Moench* presumption is rebuttable. *Moench*, 62 F.3d at 571. Accordingly, the Court declines to certify the second issue for appeal.

Defendants state the communications question as follows: "Whether incorporation by reference of corporate statements, including SEC filings and press releases, into plan communications converts those statements into actionable fiduciary communications." Doc. 33-1 at 14. This basis for interlocutory appeal reflects a misunderstanding of the nature of Plaintiffs' allegations. Plaintiffs do not base their misrepresentation claim solely on the fact that the Plan incorporates SEC filings. Rather, Plaintiffs assert that the April 25 press release contained material omissions. Therefore, even if the Fourth Circuit ruled that the statements Guertin and Wolf made in the 10-Q form were not actionable as a matter of law, the Court would still face the question whether the statements Defendants made in the press release were materially misleading. Permitting interlocutory appeal of this issue would inject even more delay into a case

that has lingered on the Court's docket for over two years. Thus, the Court declines to certify the third issue for appeal.

Defendants state the reliance question as follows: "Whether detrimental reliance is an essential element of a misrepresentation claim asserted against a fiduciary under ERISA." Doc. 33-1 at 14. The Court acknowledges the existence of authority advancing the notion that reliance is an element of an ERISA misrepresentation claim. However, as held above, Plaintiffs' factual allegations, albeit lacking, state a facially plausible claim that Defendants breached their duty of loyalty through the issuance of materially misleading statements and omissions. The Court based this holding in part on the observation that ERISA authorizes equitable relief for breaches of the duty of loyalty. Therefore, although the Court questions whether Plaintiffs will prevail on their misrepresentation claim, the prospect of success lies within the realm of plausibility. Moreover, even if the Court permitted Defendants to appeal this issue, all the other issues would remain in the suit. Considering how long this case has lingered on the Court's docket, permitting piecemeal appeal of this comparably paltry issue would primarily serve the unwholesome interest of delay. Accordingly, the Court declines to certify the fourth issue for appeal.

IV.   **CONCLUSION**

In light of the preceding considerations, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Reconsideration. (Doc. 33.) Consequently:

- The Court dismisses Plaintiffs' duty of loyalty claim based on misrepresentation/omission as to the following Defendants: Daniel N. Mendelson; Rodman W. Moorhead, III; Timothy T. Weglicki; L. Dale Crandall; Elizabeth E. Tallett; Allen F. Wise; Joel Ackerman; Lawrence N. Kugelman; Patrisha Davis;

Harvey C. DeMovick; James E. McGarry; Allen H. Spath; David A. Finkel; Maria Z. Fitzpatrick; and Richard A. Bates;

- Except as otherwise specified, the Court denies Defendants' Motion for Reconsideration as to Counts I, II, and IV of Plaintiffs' Amended Complaint.

| November 18, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |